NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| UNITED STATES OF AMERICA, | Criminal Action No.: 2:15-cr-00417 |
| --- | --- |
| Plaintiff, | |
| v. | OPINION |
| DERRICK BAER, | |
| Defendant. | |

**CECCHI, District Judge.**

## I. INTRODUCTION

Defendant Derrick Baer ("Defendant") has been indicted for receiving child pornography and possessing child pornography. Presently before the Court is Defendant's motion for a *Franks* hearing. (ECF No. 53). The Government opposed the motion, (ECF No. 55), Defendant replied, (ECF No. 56), and the Court held oral argument. (ECF No. 72 ("Tr.")). The Court has considered the submissions made in support of and in opposition to the instant motion. For the reasons set forth below, Defendant's motion is denied.

## II. BACKGROUND

On May 31, 2010 at approximately 3:08 A.M., Defendant called 911 to report that his girlfriend, Lorraine Kosnac ("Kosnac"), was unresponsive. (ECF No. 55 at 3). Emergency Medical Technicians were unable to revive Kosnac and she was pronounced dead. (*Id.*). Later that morning, Kosnac's sister ("Marcinkowski") called the police when she learned of Kosnac's death, and told them that Defendant had previously used chloroform on Kosnac to have sex. (ECF No. 53-1 at 7).

That same morning, the Pohatcong Township Police Department requested Defendant's permission to search his home and Defendant signed a consent to search form. (ECF No. 55 at 3-4). The consent to search form authorized the officers to remove "any documents, materials,

things, or other property" from Defendant's home. (ECF No. 21-3 at 1). Among the items seized was a large quantity of electronic media. (ECF No. 55 at 5). After concluding their search, Sergeant Scott Robb and Detective John Serafin of the Pohatcong Township Police Department interviewed Defendant. (*Id.* at 4). On August 10, 2011, Sergeant Robb obtained a search warrant from New Jersey Superior Court Judge Ann Bartlett to conduct forensic testing of Defendant's electronic media. (*Id.* at 5).

The electronic media obtained from the search and seizure of Defendant's home on May 31, 2010, which was the subject of the search warrant obtained by Sergeant Robb on August 10, 2011, contained approximately thirteen confirmed images of child pornography; over 762 images of possible child pornography; and approximately sixty-three videos containing possible child pornography. (*Id.* at 5-6). On or about February 6, 2015, Defendant was arrested and charged by complaint with possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2). (*Id.* at 6). Defendant was indicted on these charges on April 20, 2015. (*Id.*).

On December 22, 2015, Defendant moved to suppress the evidence of child pornography found on his electronic media, as well as his statements to the police on May 31, 2010. (*Id.*). The Court held an evidentiary hearing on July 12 and 13, 2016, and issued a decision denying Defendant's motion to suppress on September 9, 2016. (ECF No. 42).

On February 28, 2017, Defendant filed the instant motion for a *Franks* hearing. (ECF No. 53). Defendant argues that the underlying search warrant affidavit that Sergeant Robb drafted (the "Affidavit") was infused with recklessly misleading statements of fact and critically omitted facts material to the investigation and the charges pending against Defendant. As a result, Defendant contends that the state court judge, Judge Bartlett, was misled into issuing a search warrant. (*Id.*).

Defendant argues that the warrant application violated Defendant's Fourth Amendment rights, and that all evidence seized from his home as a result of the unlawful search and seizure ultimately should be suppressed. (*Id.*). The Government maintains that Defendant has failed to meet his burden to receive a *Franks* hearing, and that in any event, the motion should be denied based on the law of the case doctrine, as the Court has already dealt with these issues in its September 9, 2016 opinion on Defendant's previous motion. (ECF No. 55).

### III. <u>LEGAL STANDARD</u>

The Fourth Amendment prohibits the intentional or reckless inclusion of a material false statement (or omission of material information) in a search-warrant affidavit. In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court held that a defendant may be entitled to challenge the truthfulness of facts alleged in support of a search-warrant application. The right to a *Franks* hearing, however, is not absolute. As the Supreme Court stated in *Franks*, there is a "presumption of validity with respect to the affidavit supporting [a] search warrant." *Id.* at 171. In order to be granted a *Franks* hearing, a defendant "must first (1) make a 'substantial preliminary showing' that the affiant knowingly or recklessly included a false statement in or omitted facts from the affidavit, and (2) demonstrate that the false statement or omitted facts are 'necessary to the finding of probable cause.'" *United States v. Pavulak*, 700 F.3d 651, 665 (3d Cir. 2012) (citations omitted).

In evaluating a claim that an officer both asserted and omitted facts with reckless disregard for the truth, the Third Circuit has held that: (1) "assertions are made with reckless disregard for the truth when an officer has obvious reasons to doubt the truth of what he or she is asserting;" and (2) "omissions are made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would want to know." *Wilson v. Russo*, 212 F.3d 781, 783 (3d Cir.

3

2000). In the case of a misleading assertion, "the defendant must prove by a preponderance of the evidence that once the false statement is excised, the remaining allegations set forth in the affidavit do not establish probable cause." *United States v. Gordon*, 664 F. App'x 242, 245 (3d Cir. 2016). "In the case of a misleading omission . . . the proper course would be for the District Court to 'identify any improperly . . . omitted facts' and 'perform a word-by-word reconstruction of the affidavit' to include those facts," to determine whether there is a sufficient basis to find probable cause. *See id.* at 246 (citations omitted).

## IV. DISCUSSION

### A. Knowingly or Recklessly Including False Statements in or Omitting Facts from the Affidavit

Defendant avers in his motion that Sergeant Robb knowingly or recklessly included false statements in or omitted facts from the Affidavit by: (1) misusing quotation marks; (2) misrepresenting the statements and backgrounds of witnesses; (3) failing to include certain details about the investigation and corroboration of the statement of Kosnac's sister, Marcinkowski; and (4) overstating Sergeant Robb's law enforcement experience. Each of Defendant's contentions will be addressed in turn.

#### 1. The Use of Quotation Marks

Defendant maintains that "[t]hroughout his Affidavit, Sergeant Robb has a chronically bad habit of attributing words and statements to the witnesses in this case that they did not actually say." (ECF No. 53-1 at 5). Accordingly, Defendant contends that the Affidavit is "suspect and tainted" and "[h]ad the trial court judge known that Sergeant Robb had misquoted witnesses, it is likely that the search warrant would have been subject to far greater scrutiny and probably would have been denied." (*Id.* at 6). In response, the Government argues that "[t]he Court . . . already dismissed this specious claim and held that the use of quotation marks instead of the phrase 'in

4

sum and substance' 'does not negate the ample record of Sergeant Robb acting in good faith.'" (ECF No. 55 at 10 (quoting *United States v. Baer*, No. 15-417, 2016 WL 4718214, at *12 n.11 (D.N.J. Sept. 9, 2016))).

Preliminarily, the Court notes that on the previous suppression motion, it found that Sergeant Robb acted in good faith such that the exclusion of evidence would not be appropriate. *See Baer*, 2016 WL 4718214, at *12. Although not identical, the circumstances under which the Court must find that an officer did not act in good faith and the showing a defendant must make in order to be granted a *Franks* hearing require similar considerations. That is, the Court must find that an officer did not act in good faith when "the magistrate issued the warrant in reliance on a deliberately or recklessly false affidavit." *United States v. Am. Inv'rs of Pittsburgh, Inc.*, 879 F.2d 1087, 1106 (3d Cir. 1989) (citations omitted). Again, in order to be granted a *Franks* hearing, a defendant must first "make a 'substantial preliminary showing' that the affiant knowingly or recklessly included a false statement in or omitted facts from the affidavit[.]" *Pavulak*, 700 F.3d at 665 (citations omitted). On that basis, the Government contends that the law of the case doctrine applies to this matter, and therefore, that Defendant necessarily cannot meet his burden for a *Franks* hearing. Nonetheless, the Court will undergo a full analysis of Defendant's motion, taking into consideration that certain aspects of his motion may have been addressed in the Court's previous decision.

As stated above, in the Court's September 9, 2016 opinion, the Court held that "the lack of the phrase 'in sum [and] substance' before quotation marks in recounting Marcinkowski's statements in the search warrant affidavit . . . . [did] not negate the ample record of Sergeant Robb acting in good faith." *Baer*, 2016 WL 4718214, at *12 n.11. In other words, the Court found that the Affidavit was not "deliberately or recklessly false." *Id.* at *12. Similarly here, the Court does

5

not find that Sergeant Robb knowingly or recklessly included false statements in the Affidavit by using quotation marks without the phrase "in sum and substance." As discussed below, the Affidavit accurately conveyed the information provided in the statements at issue. Accordingly, Defendant's argument is without merit.

### 2. The Statements and Backgrounds of Witnesses

Defendant avers that Sergeant Robb did not accurately portray the statements at issue, omitted important parts of the statement of Kosnac's sister, Marcinkowski, and failed to disclose information about witnesses' backgrounds. In response, the Government contends that this Court has already considered Defendant's arguments and found that Sergeant Robb acted in good faith.

Defendant maintains that Sergeant Robb misrepresented Marcinkowski and Defendant's statements by including false statements in and/or omitting facts from the Affidavit. For example, Defendant asserts that Marcinkowski was equivocal about whether Defendant had a problem with child pornography. The record, however, shows that her statement was clear. In her statement, Marcinkowski explained that Kosnac "also advised [her] at that time that several years ago . . . [Defendant] had a problem with kiddy porn[.]" (ECF No. 53-3 at 7). Similarly, neither was Marcinkowski equivocal about whether Defendant took pictures of her daughter while she was in the shower. Marcinkowski asserted in her statement that she "realized that [Defendant] *must of in fact* taken pictures of [her] daughter." (*Id.* (emphasis added)).

Defendant also contends that the Affidavit falsely portrayed Defendant as having a preference for anal sex. However, the Affidavit is plainly supported by Defendant's statement, in which he explains that he got into "[s]exual arguments" with Kosnac because "she didn't want to do . . . the anal thing . . . . have anal intercourse." (ECF No. 53-4 at 11). Defendant additionally states that the Affidavit misconstrued the reason for Defendant's apology to Marcinkowski. In Marcinkowski's statement, she explained that Defendant showed remorse after discussing with

6

her both Defendant's problem with porn and Defendant's use of chloroform on Kosnac. Specifically, the statement reads:

> The conversation was about the fact that he said that he had . . . a problem that he admitted that he had a problem with porn was how he put it and I stated that he had a lot more than a problem with porn if he could make homemade chloroform and use it on my sister while she's sleeping and rape her and I made sure that he was aware of the fact that it could have killed her . . . . [and h]e said he knows and he regrets it and ya know that he doesn't know what happened to him he doesn't understand why he did it.

(ECF No. 53-3 at 8-9). The Affidavit does the same. After first discussing the issue of chloroform:

> [Marcinkowski] told [Defendant] she knew everything and wanted to know, what was the matter? [Defendant] admitted to her, "he had a problem with porn." [Defendant] also told her he knows what he did was wrong and he was sorry.

(ECF No. 53-2 at 5). Finally, Defendant avers that the Affidavit casted a false impression in implying that Kosnac was "scared" of Defendant. Both documents, however, place this statement into context in that Kosnac was concerned that she would get Defendant in trouble. (*Id.* at 6; ECF No. 53-3 at 7).

Defendant's arguments do not establish that Defendant has made a "substantial preliminary showing" that Sergeant Robb knowingly or recklessly included false statements in or omitted facts from the Affidavit. Rather, the Affidavit is supported by the statements at issue. At most, Defendant's arguments may provide an alternative way to interpret Marcinkowski and Defendant's statements, which is not in itself a basis on which the Court can grant a *Franks* hearing. *See United States v. Ewell*, No. 13-125, 2016 WL 463784, at *20 (W.D. Pa. Feb. 8, 2016) ("[Defendant] has not satisfied his burden because he has presented only argument of counsel providing a counter-interpretation of some of the intercepted communications without . . . demonstrating that Detective Harpster made materially false statements or omitted material information in the affidavits and did so knowingly or with a reckless disregard for the truth."), *aff'd sub nom. United States v. Fielder*, No. 17-2428, 2017 WL 6759106 (3d Cir. Dec. 4, 2017).

7

Defendant also argues that Sergeant Robb did not include in the Affidavit a discussion of the credibility, reliability, and biases of various witnesses. (ECF No. 53-1 at 18-20). Nonetheless:

> It is well-established that a substantial showing of the [witness's] untruthfulness is not sufficient to warrant a *Franks* hearing. The Supreme Court made clear throughout *Franks* that a substantial preliminary showing of intentional or reckless falsity *on the part of the affiant* must be made in order for the defendant to have a right to an evidentiary hearing on the affiant's veracity.

*United States v. Brown*, 3 F.3d 673, 677 (3d Cir. 1993). Further, "there is no obligation on the affiant police officers to provide information about the credibility of the witness[.]" *United States v. Meehan*, No. 11-0440, 2013 WL 1875821, at *7 (E.D. Pa. May 6, 2013); *see also United States v. Heilman*, 377 F. App'x 157, 178 (3d Cir. 2010) (holding that the fact that the informant used drugs did not, in and of itself, indicate that any testimony he gave was false or unreliable). *Cf. United States v. Hall*, 113 F.3d 157 (9th Cir. 1997) (in a factually distinct case, holding that the testimony of an informant was not sufficient to support the issuance of a warrant where the warrant was based *solely* on the informant's testimony and the informant's previous convictions of serious crimes were not included in the search warrant affidavit). As such, Defendant's arguments are without merit.

### 3. Details About the Investigation and Corroboration of Marcinkowski's Statement

Defendant professes that Sergeant Robb omitted from the Affidavit certain details about the investigation.[1] For example, Defendant contends that Sergeant Robb should have stated that he found no child pornography in the form of pictures or books in Defendant's house. The Court finds this unavailing, as the purpose of obtaining the search warrant was to locate such pictures on Defendant's electronic media, and the Affidavit presented sufficient probable cause that such

---

[1] Again, the Government contends that this Court has already considered Defendant's arguments and found that Sergeant Robb acted in good faith.

8

pictures would be found. The Affidavit stated that during the search of Defendant's home, Sergeant Robb found that "on one of the floppy disks it had the writing of 'Derrick's eyes ONLY' . . . . 'pics incriminating' . . . . [and on o]ne of these hard drives . . . the word 'porn' [was] handwritten on it." (ECF No. 53-2 at 8-9). Further, Sergeant Robb also found a number of floppy disks, desktop computers, and hard drives. (*Id.*). Indeed, the evidence later seized from Defendant's home confirmed that his electronic media contained approximately thirteen confirmed images of child pornography; over 762 images of possible child pornography; and approximately sixty-three videos containing possible child pornography. (ECF No. 55 at 5-6).

Defendant also contends that the Affidavit should have stated that Defendant's daughter never indicated that there was any type of sexual impropriety between her and her father, and that authorities made no findings that Defendant abused either of his children. This too is unpersuasive. The absence of assertions and findings that were never made by witnesses and authorities do not render the Affidavit any less sufficient of probable cause. Moreover, the record contained assertions that Defendant's daughter woke up to Defendant standing over her with a wash cloth that smelled like paint. (ECF No. 53-3 at 7). Lab results also confirmed that chloroform was on the rag found in the jar in Defendant's home, and an autopsy report concluded that chloroform was found in Kosnac's body. (ECF No. 41 at 129-32).

Defendant additionally avers that the Affidavit should have included the fact that Sergeant Robb previously requested permission from a prior prosecutor to file an application for a search warrant in this matter. The reason Sergeant Robb was denied permission, however, appears to have no relation to whether the Affidavit contained adequate probable cause. (*See* ECF No. 46 at 61 (answering when questioned about why he was denied permission to even begin drafting a

search warrant affidavit as because the prior prosecutor stated: "Who's to say she didn't like it?" in apparently referring to Defendant's use of chloroform on Kosnac)).

Further, Defendant maintains that Sergeant Robb did not corroborate Marcinkowski's statement that: (1) Defendant had an interest in child pornography; (2) Defendant's daughter stated that she found her father standing over her with a washcloth that smelled like paint; and (3) Defendant took a picture of his niece in the shower. In other words, Defendant argues that Sergeant Robb knowingly or recklessly included false statements by incorporating Marcinkowski's statement into the Affidavit without further investigation. "[A]ssertions are made with reckless disregard for the truth when an officer has obvious reasons to doubt the truth of what he or she is asserting." *Wilson*, 212 F.3d at 783. Sergeant Robb found a number of floppy disks, desktop computers, and hard drives with the writing of "Derrick's eyes ONLY," "pics incriminating," and "porn." Moreover, Marcinkowski's statement discussed Defendant's use of chloroform on Kosnac, which was later corroborated by: (1) the lab results confirming that chloroform was on the rag found in the jar in Defendant's home, and (2) the autopsy report concluding that chloroform was found in Kosnac's body. (ECF No. 41 at 129-32). With this information, the Court does not find that Sergeant Robb had obvious reasons to doubt Marcinkowski's statement. *See United States v. Bush*, 647 F.2d 357, 363 (3d Cir. 1981) (holding that police need not corroborate every detail of an informant's report to establish sufficient veracity of information for probable cause). Accordingly, Defendant's arguments are without merit.

#### 4. Sergeant Robb's Law Enforcement Experience

Finally, Defendant attests that Sergeant Robb misrepresented his education, training, and experience in the Affidavit. Paragraph 1 of the Affidavit describes Sergeant Robb's training, education, and experience, explaining that Sergeant Robb has "been involved in approximately several hundred arrests, including, but not limited to, most statutes covering New Jersey Criminal

10

code 2C and more specifically in this matter, criminal homicide, and/or endangering the welfare of children by possession of child pornography." (ECF No. 53-2 at 2).

Sergeant Robb did not testify inconsistently with the Affidavit's statement that he was involved in several hundred arrests in a variety of criminal cases under the New Jersey Code, that include this matter concerning child pornography. (*See generally* ECF No. 46). Although Defendant contends that "the flavor" of the Affidavit, including the use of the phrases, "based on my education," "based on my training," and "based on my experience" makes it appear as if Sergeant Robb had more education, training, and experience than he actually had, Tr. 55:10-13, the Affidavit is clear. Furthermore, Sergeant Robb testified that in addition to arrests, he gained experience in these types of matters from consulting with his colleagues, (ECF No. 46 at 117), and "attending many schools and training seminars dealing in the investigation of crimes, processing of crime scenes[,] and recovery of evidence[.]" (ECF No. 53-2 at 1). Indeed, Sergeant Robb listed the 18 schools and training seminars that he attended in the Affidavit, including in the areas of arrest, search and seizure, crime scene, recovery of evidence, and managing property and evidence, to which there is no dispute. (*Id.* at 1-2). As such, Defendant's arguments are without merit.

### B. Demonstrating That the False Statements or Omitted Facts Are Necessary to the Finding of Probable Cause

As discussed above, the Court does not find that Defendant has made a substantial preliminary showing that Sergeant Robb knowingly or recklessly included false statements in or omitted facts from the Affidavit. Even if, assuming *arguendo*, Sergeant Robb did knowingly or recklessly include false statements in or omit facts from the Affidavit, the Court does not find that the alleged false statements or alleged omitted facts were necessary to the finding of probable cause. After reviewing the parties' voluminous submissions and conducting two days of hearings, the Court found that the search warrant was based on probable cause because:

> First, Kosnac told Marcinkowski that "several years ago [Defendant] had a problem with kiddy porn in the form of pictures and books." Second, Defendant told Marcinkowski "he had a problem with porn." Third, Defendant allegedly took a photograph Marcinkowski's minor daughter while she was showering. Fourth, Defendant's electronic media included floppy disks label[]ed "Derrick's eyes ONLY" and "pics incriminating," and a hard drive marked "porn." Finally, Defendant's minor daughter reported she once woke up and found Defendant standing over her with a washcloth, raising the possibility to law enforcement Defendant may have used chloroform on his minor daughter.

*Baer*, 2016 WL 4718214, at *8 (citations omitted). The Court also found that there was a substantial basis for probable cause because chloroform was definitively found in Defendant's home and Kosnac's body, providing credibility to Marcinkowski's statement:

> [T]he lab results confirming that chloroform was on the rag found in the jar in Defendant's home and the autopsy report that chloroform was found in Kosnac's body further confirmed a central aspect of the account Kosnac reportedly gave Marcinkowski concerning Defendant's conduct—his use of chloroform on her to knock her out for sex. This makes it even more likely that Kosnac's account of Defendant's problem with child pornography was credible . . . . [A]ll [of this information] provided a substantial basis for probable cause that child pornography would be found on Defendant's electronic media.

*Id.* at *9. The Court has considered all of Defendant's contentions. Nonetheless, even after removing any alleged false statements from or including any alleged omitted facts in the Affidavit, *see United States v. Conley*, 4 F.3d 1200, 1208 n.7 (3d Cir. 1993); Tr. 23:9-12, the Court still finds that the search warrant was based on probable cause, including because of the vast amount of electronic media found in Defendant's home, and the labels on such electronic media. *See United States v. Miller*, 534 F. App'x 204, 210 (4th Cir. 2013) (considering, among other things, that the "truck contained a laptop computer, digital recording devices, and numerous memory cards" in determining whether probable cause existed that defendant created or possessed child pornography); *United States v. Fiscus*, 64 F. App'x 157, 163 (10th Cir. 2003) (noting that the electronic media seized from defendant's home "w[as] labeled '[defendant]'s Pics'" as part of its analysis in deciding whether probable cause existed that defendant's computer and diskettes

contained child pornography); *United States v. Peterson*, 294 F. Supp. 2d 797, 806 (D.S.C. 2003) (observing as a consideration that "internet links were entitled 'Underage xxxxxxx'" in adjudicating whether there was sufficient probable cause that defendant's computer contained items subject to seizure), *aff'd*, 145 F. App'x 820 (4th Cir. 2005). Defendant's electronic media encompassed one compact disc, four desktop computers, eighteen hard drives, and sixty-eight floppy disks. (ECF No. 53-2 at 2-4). Moreover, the electronic media contained floppy disks labeled "Derrick's eyes only" and "pics incriminating," a hard drive labeled "porn," and additional pieces of evidence labeled "pics." (*Id.* at 8-9). Accordingly, Defendant's motion is denied.

## V. CONCLUSION

For the foregoing reasons, Defendant's motion is denied. An appropriate Order accompanies this Opinion.

DATED: May 2, 2018

**CLAIRE C. CECCHI, U.S.D.J.**