NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Action No.: 2:15-00417 (CCC) |
| Plaintiff, | |
| v. | **OPINION** |
| DERRICK BAER, | |
| Defendant. | |

**CECCHI, District Judge.**

Defendant Derrick Baer ("Defendant") was charged in a two-count indictment with receipt of child pornography and possession of child pornography. Presently before the Court are two of Defendant's pro se motions: (1) a motion to suppress evidence (ECF No. 99), and (2) a motion to dismiss the indictment pursuant to the Speedy Trial Act of 1974, the Sixth Amendment to the United States Constitution, and Federal Rule of Criminal Procedure 48(b) (ECF No. 115).[1] The Court has considered the submissions and oral arguments made in support of and in opposition to the instant motions. For the reasons set forth below, the Defendant's pro se motions are denied.

## I. FACTUAL BACKGROUND

On May 31, 2010, at approximately 3:08 a.m., Defendant called 911 to report that his girlfriend, Lorraine Kosnac, was unresponsive. (First Tr.[2] at 24-25). Local police officers and rescue personnel responded to Defendant's residence in Bloomsbury, New Jersey. *Id.* at 24-25,

---

[1] Defendant has been, and currently is, represented by counsel. Nonetheless, the Court accepted both pro se motions from the Defendant.

[2] "First Tr." refers to the transcript of the first day of the evidentiary hearing, which occurred on July 12, 2016. At this hearing, the Court heard testimony related to the suppression of the evidence found in Defendant's home.

28-29. Emergency medical technicians were unable to revive Kosnac and she was pronounced dead at approximately 3:58 a.m. *Id.* at 28-29.

That same morning, Cynthia Marcinkowski, Kosnac's sister, called the police when she learned of Kosnac's death and told them Defendant had previously used homemade chloroform on Kosnac to incapacitate her in order to perform sexual acts. *Id.* at 31, 81-82. Also that same morning, Sharon Mancini, Kosnac's mother, called the police with concerns that Defendant may have injured Kosnac two months earlier. *Id.* at 31:18-32:1.

The Warren County Prosecutor's Office ("WCPO") and the Pohatcong Township Police Department ("PTPD") launched an investigation into the circumstances of Kosnac's death. At approximately 5:30 a.m., Sergeant Scott Robb of the PTPD arrived on the scene. *Id.* at 77-78. Sergeant Robb brought a consent to search form and, after getting briefed by the other officers, asked Defendant for permission to search the house. *Id.* at 79-80, 84-85. Defendant gave the officers permission to search his residence and signed a consent to search form, which was also signed by Sergeant Robb and Officer Anthony Goodell of the PTPD, at approximately 6:12 a.m. *Id.* at 36-37, 85, 88. The consent to search form provided for a "complete search" of the residence, without limitation, and authorized officers to remove "any documents, materials, things, or other property." (Govt. Ex. 201).[3]

After Defendant signed the consent to search form, Sergeant Robb and WCPO Detective John Serafin returned to police headquarters to interview Marcinkowski. (First Tr. at 81-82). She told the officers the following:

> (1) Two months earlier, Kosnac temporarily left Defendant after she discovered jars containing washcloths that smelled like ammonia under her bed and learned Defendant used chloroform on her while she was sleeping to rape her. When Kosnac confronted Defendant, he admitted the jars contained homemade

---

[3] The Government and Defense exhibits referenced herein are from the two-day evidentiary hearing held on July 12 and July 13, 2016.

chloroform that he learned to make on the Internet. (Govt. Ex. 401 at 5-6; First Tr. at 31).

(2) Kosnac's daughter told Kosnac that one morning she had woken up to find Defendant standing over her with a washcloth in his hand. (Govt. Ex. 401 at 6).

(3) Kosnac told Marcinkowski that several years ago Defendant had a problem with "kiddy porn" in the form of pictures and books. *Id.* at 6; (First Tr. at 92).

(4) Kosnac developed an infected cyst on her rectal area that required surgery. At the hospital, when Marcinkowski confronted Baer, he (a) admitted to using chloroform on Kosnac to have sex with her, (b) said he learned to make chloroform on the Internet, and (c) said he had a problem with porn. (Govt. Ex. 401 at 6).

(5) Several years ago, Marcinkowski's teenage daughter spent the night at Defendant and Kosnac's residence. When Marcinkowski picked up her daughter in the morning, her daughter said while she was in the shower Defendant took a picture of her. When Marcinkowski confronted Defendant about this allegation, he denied it. *Id.* at 6; (First Tr. at 92-93).

After interviewing Marcinkowski, Sergeant Robb and Detective Serafin returned to Defendant's residence to continue the investigation. (First Tr. at 93). When they arrived around 8:00 a.m., the search was still underway. *Id.* The search of Defendant's home concluded at approximately 11:50 a.m. *Id.* at 61. The officers seized numerous pieces of electronic media, including eighteen hard drives, four computers, sixty-eight 3½ inch floppy disks, and one CD-R. (Govt. Ex. 402). One of the floppy disks was labeled "Derrick's eyes ONLY" and another floppy disk was labeled "pics incriminating." (First Tr. at 131). One of the hard drives was labeled "porn." *Id.* The officers also found a jar with a rag in it at Defendant's house that they planned to test for chloroform. *Id.* at 115-16.

The Warren County Medical Examiner conducted an autopsy of Kosnac on May 31, 2010. (Govt. Ex. 304). In the autopsy report issued in October 2010, the Medical Examiner concluded "exposure to chloroform" was a "[c]ontributory [c]ondition" of death, but the cause of death was cardiomegaly with atherosclerotic coronary artery disease. *Id.* Additionally, on June 8, 2010, WCPO Detective Hernani Goncalves interviewed Defendant's minor daughter. (Govt. Ex. 401 at

11). The daughter told Detective Goncalves she woke up to Defendant standing over her with a washcloth that smelled like paint. (Def. Ex. 100 at 18-20; Govt. Ex. 401 at 11).

On August 10, 2011, Sergeant Robb obtained a search warrant from New Jersey Superior Court Judge Ann R. Bartlett to conduct forensic testing of Defendant's electronic media for "evidence pertaining to crimes including, but not limited to, Criminal Homicide, N.J.S.A. 2C:11-2, and/or Endangering the Welfare of a Child, N.J.S.A. 2C:24-4." (Govt. Ex. 402 ¶ 3). Thereafter, the New Jersey Regional Computer Forensics Laboratory ("RCFL") conducted a forensic examination of Defendant's electronic media. (Govt. Ex. 305). The RFCL initially located a total of approximately thirteen confirmed images of child pornography; over 762 images of possible child pornography; and approximately sixty-three videos containing possible child pornography. (Govt. Ex. 311 at 3; Govt. Ex. 312 at 3). The Government now represents that a total of 380 images containing child pornography have been recovered from Defendant's devices. (ECF No. 125 at 2).

In 2014, law enforcement received a Seagate Go Flex Hard Drive (the "Seagate Drive") from Defendant's then-girlfriend C.J., who brought the drive from her home that she shared with the Defendant to the PTPD. (ECF No. 90 at 3). Local authorities did not search the Seagate Drive at that time because C.J. did not allege that there was evidence of criminality on that drive. In March 2017, local authorities were advised of allegations that the Defendant sexually abused C.J.'s son, who reported the sexual abuse to the Monmouth County Child Protection and Permanency office. (ECF No. 92 at 5). C.J.'s son indicated that the Defendant not only sexually abused him on multiple occasions, but took pictures of the alleged abuse and transmitted some of the images to his friends. (ECF No. 90 at 1-2). Federal law enforcement was informed of the allegations in September 2017. (ECF No. 92 at 5-6). On October 16, 2017, the Government obtained a Federal

4

warrant to search the Seagate Drive and discovered images of additional child pornography during the search. (ECF No. 92 at 6).

## II.   **MOTION TO SUPPRESS EVIDENCE**

On November 2, 2018, Defendant filed a pro se motion to suppress the evidence contained on the electronic media found in his home in 2010. (ECF No. 99). In his motion, Defendant argues that the search warrant was not supported by probable cause, is not sufficiently particular, and that the good faith exception should not apply. (ECF No. 99 at 3-26). The Government opposed the motion, (ECF No. 101), and Defendant replied. (ECF No. 105). The Court heard oral argument on this matter on March 20, 2019. (ECF No. 141).

### A. PROCEDURAL BACKGROUND

The Court previously considered the same underlying facts at issue in the instant pro se suppression motion. On December 22, 2015, Defendant filed a pretrial motion to suppress the evidence against him. (ECF No. 21). Defendant argued, among other things, that the child pornography found on his electronic media should be suppressed because the search warrant was obtained in violation of his Fourth Amendment rights. *Id.* The Government submitted a brief in opposition to Defendant's motion on February 16, 2016, (ECF No. 25), and Defendant replied. (ECF No. 26). The Court held evidentiary hearings on Defendant's motion on July 12 and July 13, 2016. Following the hearings, both parties filed supplemental submissions on July 26, 2016. (ECF Nos. 37, 38). Subsequently, the Court held oral argument on Defendant's motion on July 28, 2016. (ECF No. 39). Following oral argument, the Government filed a supplemental submission on August 3, 2016. (ECF No. 40).

The Court entered an opinion denying Defendant's motion to suppress evidence recovered from electronic media found in Defendant's home on September 9, 2016. *United States v. Baer,*

No. 15-417, 2016 WL 4718214, at *8 (D.N.J. Sept. 9, 2016) (hereinafter *"Baer I"*). In its opinion, the Court found that suppression was not warranted because "the search warrant [was] supported by probable cause, [was] sufficiently particular, and the delay in obtaining the search warrant was reasonable." *Id.* The Court also held that "[e]ven if the search warrant was defective or the amount of time to apply for and execute the search warrant was unreasonably long, suppression in this case is unwarranted because law enforcement acted in good faith." *Id.* at *12.

Thereafter, Defendant filed a motion for a *Franks* hearing on February 28, 2017. (ECF No. 53); *see generally Franks v. Delaware*, 438 U.S. 154 (1978). In this motion, Defendant argued that "the warrant application violated [his] Fourth Amendment[] rights, and all evidence seized from his home as a result of the unlawful search and seizure ultimately should be suppressed." *Id.* at 1. The Government opposed this motion, (ECF No. 55), and Defendant replied. (ECF No. 56). The Court heard oral argument on this motion on July 27, 2017. (ECF No. 59). On August 4, 2017, Defendant submitted further briefing on the issue. (ECF No. 61). The Court subsequently denied Defendant's motion for a hearing. *United States v. Baer*, No. 15-417, 2018 WL 2045991, at *6 (D.N.J. May 2, 2018) (hereinafter *"Baer II"*).

Eight days later, Defendant filed a motion for reconsideration of the Court's *Baer II* decision. (ECF. No. 77). Defendant submitted a brief in support of his motion for reconsideration on May 24, 2018. (ECF No. 80). The Government opposed this motion, (ECF No. 81), and Defendant replied. (ECF No. 83). On August 8, 2018, after considering the parties' submissions, the Court denied Defendant's motion for reconsideration. *United States v. Baer*, No. 15-417, 2018 WL 3756437 (D.N.J. Aug. 08, 2018) (hereinafter *"Baer III"*). The instant motion is therefore the fourth motion concerning the same underlying facts.

## B. SUPPRESSION DISCUSSION

### 1. The Court Previously Addressed Defendant's Arguments to Suppress this Evidence and Found that Suppression Was Unwarranted.

The Court previously ruled on Defendant's motions to suppress the evidence at issue here on three separate occasions. First, as discussed above, Defendant filed an omnibus motion on December 22, 2015, in which he argued for the suppression of the evidence found in his home based on the same legal grounds that he relies on now. (ECF No. 21). The Court rejected these arguments and denied Defendant's motion to suppress. *Baer I*, 2016 WL 4718214, at *15. Second, after Defendant's initial suppression motion was denied in September 2016, Defendant essentially repackaged his original argument and filed a motion for a hearing to determine whether the same evidence should be suppressed. (ECF No. 53). After considering Defendant's motion and the parties' subsequent briefs, the Court denied Defendant's motion for a hearing. *Baer II*, 2018 WL 2045991, at *6. Third, eight days after the Defendant's motion for a hearing was denied, Defendant filed a motion for reconsideration of the Court's denial, (ECF No. 77), relying again on similar arguments to contend that this evidence should be suppressed. (ECF Nos. 77, 80, 83). The Court denied Defendant's motion for reconsideration. *Baer III*, 2018 WL 3756437, at * 4. Overall, including the motion addressed herein, the Court has entertained four motions to suppress the evidence at issue, (ECF Nos. 21, 53, 77, 99), with two days of evidentiary hearings, three oral arguments, and at least fifteen written submissions. (ECF Nos. 25, 26, 37, 38, 40, 55, 56, 61, 80, 81, 83, 101, 105; ECF No. 126 at Ex. 2).

Defendant advances three main arguments in his pro se suppression motion, as well as one additional argument in his reply brief. The Court addressed Defendant's same contentions in its previous decisions. Defendant first argues that the search warrant lacked sufficient probable cause

to support a search for child pornography. (ECF No. 99 at 33-38); *see also* (ECF No. 37 at 19-20 for Defendant's previous argument on this point). The Court already concluded in its prior rulings that "probable cause existed for finding child pornography on Defendant's electronic media." *Baer I*, 2016 WL 4718214, at \*15; *see also Baer II*, 2018 WL 2045991, at \*6. The Court made this decision after presiding over two days of evidentiary hearings, reviewing all pertinent evidence regarding the search warrant application, hearing oral argument, analyzing the relevant legal standards, and carefully considering multiple written submissions from both parties. *Id.* at \*15-26. In its decision, the Court outlined five pieces of information in the search warrant application that created a basis for probable cause to search Defendant's electronic media for child pornography. The Court analyzed the issue extensively in its prior decision, writing:

> First, Kosnac told Marcinkowski that "several years ago [Defendant] had a problem with kiddy porn in the form of pictures and books." (Govt. Ex. 401 ¶ 5I, admitted into evidence July 12, 2016). Second, Defendant told Marcinkowski "he had a problem with porn." (*Id.*). Third, Defendant allegedly took a photograph of Marcinkowski's minor daughter while she was showering. (*Id.*). Fourth, Defendant's electronic media included floppy disks labelled "Derrick's eyes ONLY" and "pics incriminating," and a hard drive marked "porn." (*Id.* ¶ 5(g)). Finally, Defendant's minor daughter reported she once woke up and found Defendant standing over her with a washcloth, raising the possibility to law enforcement Defendant may have used chloroform on his minor daughter. (*Id.* ¶ 5(i)). These pieces of information, taken together, create a substantial basis for concluding probable cause existed for finding child pornography on Defendant's electronic media. . . . As Sergeant Robb explained at the hearing, the suspicious labels found on some of the electronic media items (*i.e.*, "pics incriminating, "porn," and "Derrick's eyes ONLY"), taken together with the information provided by Marcinkowski that Kosnac once stated Defendant "had a problem with kiddy porn" and that Defendant had taken a photograph of Marcinkowski's minor daughter while showering, contributed to the possibility that child pornography would be found on Defendant's electronic media. (Second Tr.[4] at 126-27). Sergeant Robb further testified the large amount of electronic media found in the house (eighteen hard drives, sixty-eight floppy disks, four computers, and one CD-R) made him want to examine these items to see if child pornography would be located within. (*Id.* at 127).
>
>     Moreover, the lab results confirming that chloroform was on the rag found in the jar in Defendant's home and the autopsy report that chloroform was found in Kosnac's

---

[4]     "Second Tr." refers to the transcript of the second day of the relevant evidentiary hearing, which occurred on July 13, 2016. At this hearing, the Court heard testimony related to the suppression of the evidence found in Defendant's home.

body further confirmed a central aspect of the account Kosnac reportedly gave
Marcinkowski concerning Defendant's conduct—his use of chloroform on her to knock
her out for sex. (First Tr. at 129-32). This makes it even more likely that Kosnac's account
of Defendant's problem with child pornography was credible. *See United States v. Bush*,
647 F.2d 357, 363 (3d Cir. 1981) (police need not corroborate every detail of an informant's
report to establish sufficient veracity of informant for probable cause). As such, hearsay
concerning Defendant's previous problem with "kiddy porn" and his other sexual
predilections, along with corroborating information, all provided a substantial basis for
probable cause that child pornography would be found on Defendant's electronic media.

*Id.* Thus, the Court found that the search warrant was valid and Defendant's electronic media

should not be suppressed. *Id.* at *15-16. Additionally, the Court reconfirmed its conclusion that

the warrant was supported by probable cause in its subsequent opinion on Defendant's motion for

a hearing. *Baer II*, 2018 WL 2045991, at *6 (holding that "the search warrant was based on

probable cause, including because of the vast amount of electronic media found in Defendant's

home, and the labels on such electronic media").

Next, Defendant contends that the evidence at issue should be suppressed because the

affidavit does not contain "particularized facts to infer nexus." (ECF No. 99 at 31); *see also* (ECF

No. 37 at 21-22) for Defendant's previous argument on this point). In its September 2016 ruling,

the Court considered Defendant's arguments concerning particularity and concluded that "the

search warrant particularly described the places to be search[ed] for child pornography . . . [and]

described in detail each computer, hard drive, floppy disk, and CD the police sought to search for

evidence related to specific criminal offenses." *Baer I*, 2016 WL 4718214, at *9. Moreover, the

Court found that the search warrant affidavit specifically listed the criminal offenses at issue and

identified possible electronic evidence pertaining to those offenses, such as child pornography and

internet searches about chloroform. *Id.* at *10.

Additionally, Defendant avers that the law enforcement officials here should not be

protected by the good faith doctrine. (ECF No. 99 at 15-25); *see also* (ECF No. 37 at 18-19 for

Defendant's previous argument on this point). The Court previously decided that the good faith

doctrine properly applied after thoroughly examining the parties' submissions and presiding over evidentiary hearings, during which the affiant, Sergeant Robb, was found to be credible. *Baer I*, 2016 WL 4718214, at *12. Moreover, the Court also extensively considered the conduct of law enforcement in its decisions on Defendant's motion for a hearing and his subsequent motion to reconsider the Court's denial of that motion. *Baer II*, 2018 WL 2045991, at *6; *Baer III*, 2018 WL 3756437 (denying reconsideration). In its ruling on Defendant's first suppression motion, the Court analyzed Defendant's arguments about the good faith doctrine pursuant to *United States v. Hodge*. 246 F.3d 301, 307 (3d Cir. 2001). After conducting its analysis, the Court found that Sergeant Robb did not engage in reckless or grossly negligent conduct in applying for the search warrant and, therefore, the exclusion of evidence would not be appropriate. *Baer I*, 2016 WL 4718214, at *12. This conclusion was confirmed in the Court's decision on Defendant's motion for a hearing. *Baer II*, 2018 WL 2045991, at *6 (finding that Defendant has not properly shown that Sergeant Robb acted knowingly or recklessly in obtaining the search warrant). The Court further concluded in its September 2016 decision that the judge who issued the warrant did not abandon her judicial role and also that the warrant was sufficiently particular and supported by probable cause. *Baer I*, 2016 WL 4718214, at *12. Therefore, the Court held that the good faith doctrine applied and the evidence should not be suppressed. *Id.*

Finally, Defendant argues in his reply brief[5] that he did not consent to any search for child pornography in his home. (ECF No. 105 at 8-9); *see also* (ECF No. 37 at 1-4 for Defendant's previous argument on this point). The Court formerly concluded that Defendant freely gave consent to search his home and that "Defendant did not limit the scope of his consent." *Baer I*,

---

[5] While the Court acknowledges that this argument was not raised in Defendant's moving brief (ECF No. 99), the Court has considered the arguments contained in Defendant's reply brief given Defendant's pro se status.

2016 WL 4718214, at *11. Specifically, the Court found that Defendant signed a consent to search form which "specifically provided for a 'complete search' of Defendant's residence, without limitation, including all 'documents, materials, things, or other property' considered pertinent by law enforcement." *Id.* Furthermore, Defendant reaffirmed his consent at least twice after signing the consent to search form. *Id.* Accordingly, the Court concluded in its initial suppression decision that "Defendant provided a general consent and did not restrict his consent to certain subject matters, namely, items related to the allegations concerning his use of chloroform on Kosnac." *Id.* (*citing Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *Florida v. Jimeno*, 500 U.S. 248, 250-51 (1990) (approving consent searches because a search permitted by consent is reasonable)).[6]

Now, Defendant argues again that the evidence found in his home should be suppressed. As such, Defendant's pro se suppression motion effectively asks the Court to alter its three prior decisions that found the suppression of this evidence to be unwarranted.

According to local rules, any motion to alter or amend a court's prior judgment must be filed within fourteen days of entry of the initial judgment. L. Civ. R. 7.1(6)(b); *United States v. Curry*, No. 04-280, 2006 WL 1320083, at *1 (D.N.J. May 12, 2006) (finding that Local Civil Rule 7.1 "is applicable in criminal cases tried in the District of New Jersey"). The instant motion was filed on November 2, 2018, (ECF No. 99), which is more than fourteen days from the initial denial of Defendant's suppression motion on September 9, 2016, the denial of Defendant's motion for a

---

[6] Even if Defendant's consent was limited to searches related to Kosnac's death, the suppression of the evidence contained in Defendant's electronic devices would be unnecessary pursuant to the inevitable discovery doctrine. *United States v. Stabile*, 633 F.3d 219, 245-46 (3d Cir. 2011) (holding that where an officer illegally viewed the contents of videos on Defendant's computer, the evidence should not be suppressed because the police would have inevitably and lawfully uncovered the evidence). During the homicide investigation, the police learned that Defendant had researched how to make chloroform on the internet and later used this homemade chloroform on Kosnac, contributing to her death. Accordingly, law enforcement authorities, following routine and lawful procedures, would have eventually searched Defendant's devices for evidence of chloroform internet searches.

hearing on May 2, 2018, and the denial of Defendant's motion for reconsideration on August 8, 2018.[7] The Court will nonetheless address Defendant's arguments.

### 2. The Court Need Not Reexamine Its Prior Decisions Because No Extraordinary Circumstances Are Present.

In his pro se suppression motion, Defendant again urges the Court to suppress the same evidence that this Court has repeatedly found was lawfully obtained. The Court finds that it has thoroughly considered Defendant's suppression arguments on multiple occasions and has properly concluded that the relevant evidence should not be suppressed. Courts should only reexamine prior decisions in extraordinary circumstances. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) ("[A]s a rule courts should be loathe to [revisit their prior decisions] in the absence of extraordinary circumstances."). Because no extraordinary circumstances exist here, the Court declines to revisit its prior decisions on this issue.

---

[7]     Defendant appears to suggest that the instant motion should not be time-barred based on a prior pro se suppression motion Defendant submitted to the Court, which was postmarked on September 29, 2016 and received by the Court on October 3, 2016, following the Court's September 9, 2016 denial. (ECF No. 126, Ex. 2). Considering either September 29, 2016 or October 3, 2016 to be the filing date, the motion would still be time-barred according to the fourteen-day requirement in the local rules. L. Civ. R. 7.1(6)(b). Although the motion is dated September 23, 2016, which is within the fourteen-day period from the Court's September 9, 2016 decision, Defendant provides no statement or other proof that he delivered the motion to prison officials for mailing on that date, as required for the prison mailbox rule to apply. *See Martin v. Attorney General of U.S.*, 466 F. App'x 106, 107 (3d Cir. 2012) (prison mailbox rule not applied where petitioner's certificate of mailing did not state when he gave it to prison authorities for mailing to the court); *Bond v. VisionQuest,* 410 F. App'x 510, 515 (3d Cir. 2011) (declining to apply the prison mailbox rule where petitioner provided "no evidence –and does not even directly state – that he provided the complaint to prison authorities to mail to the District Court."); *Conover v. United States*, 2013 WL 4431259, at *5 (D.N.J. Aug. 14, 2013) (concluding that the prison mailbox rule was not applicable "because there [was] no proof that the Notice of Appeal was deposited as special/legal mail with the internal mail system" at the prison on the relevant date).

According to the Third Circuit, extraordinary circumstances exist where a different outcome is justified by: (1) the availability of new evidence; (2) an intervening change in controlling law; or (3) the need to correct a clear error of law or prevent manifest injustice. *See Wiest v. Lynch*, 710 F.3d 121, 128 (3d Cir. 2013); *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995). Reconsideration motions "may not be used to relitigate old matters, nor to raise arguments or present evidence that could have been raised prior to the entry of judgment." *P. Schoenfeld Asset Management LLC v. Cendant Corp.*, 161 F. Supp. 2d 349, 352 (D.N.J. 2001); *see also Altana Pharma AG v. Teva Pharm. USA, Inc.*, No. 04-2355, 2009 WL 5818836, at *1 (D.N.J. Dec. 1, 2009) ("[C]ourts in this District routinely deny motions for reconsideration that simply re-argue the original motion."); *Tischio v. Bontex, Inc.*, 16 F. Supp. 2d 511, 532 (D.N.J. 1998) ("[A] motion for reconsideration should not provide the parties with an opportunity for a second bite at the apple.") (citations omitted). Moreover, the presentation of a novel legal argument does not entitle a party to a reevaluation of the Court's prior ruling. *United States v. Rabreau*, 376 F. App'x 221, 224 (3d Cir. 2010). As the Third Circuit explained in *Rabreau*, if reconsideration were allowed for every new argument, "the exception [would] swallow the rule, as almost any litigant would be able to articulate at least one reason why his or her arguments are unique," which would "drastically undermine" judicial economy, finality, and jurisprudential integrity. *Id.*

The Court need not reexamine its prior decisions because none of the circumstances that warrant reconsideration are present here. First, after comparing the statement of facts in Defendant's prior and current suppression motions, the Court cannot discern any new factual allegations that would change the Court's analysis. (*Compare* ECF No. 99 at 39-40 *with* ECF No. 21 at 1-4). At the hearing on March 20, 2019, however, Defendant contended that there was new

discovery—six photographs of Defendant's home—that were not made available to him until July 11 or 12, 2016. (Hr'g Tr. at 61:13-17 (March 20, 2019); DBAER000653; DBAER000654; DBAER000657; DBAER000668; DBAER000671; DBAER000711). Defendant argued that these images establish that Defendant was painting his bathroom and therefore explain his minor daughter's statement that she woke up to Defendant putting a washcloth that smelled like paint close to her face while she was sleeping in her bed. *Id.*; (Hr'g Tr. at 46:9-48:3 (March 20, 2019)).

Preliminarily, these images are not new discovery because the Court previously considered numerous similar, and even some identical, photographs of Defendant's home that he submitted as exhibits in the 2016 evidentiary hearing.[8] (Def. Exs. 200-218). Moreover, as stated at the March 20, 2019 hearing, the Government turned these images over to Defendant in its initial discovery and Defendant has had access to these exhibits since 2016. (Hr'g Tr. at 61:12-18, 62:25-63:1 (March 20, 2019)). Accordingly, these photographs are not new discovery. *Guinta v. Accenture, LLP*, 2009 WL 301920, at *7 (D.N.J. Jan. 23, 2009) (concluding that evidence that had been in possession of the parties during the initial proceedings are not "newly discovered" and therefore does not warrant reconsideration). Defendant could have raised this argument in the numerous submissions addressing suppression since July 12, 2016, including Defendant's supplemental brief after the suppression hearing, (ECF No. 37), his motion for a hearing to determine suppression, (ECF No. 53), his two briefs regarding that motion, (ECF Nos. 56, 61), his motion for reconsideration, (ECF No. 77), or his two briefs on the motion for reconsideration, (ECF Nos. 80, 83). *See P. Schoenfeld*, 161 F. Supp. 2d at 352 (holding that motions to alter judgment may not be used to raise arguments or present evidence that could have been raised before).

---

[8] Two of the photographs are entirely identical to images in Defendant's Suppression Hearing Exhibits (Def. Exs. 203, 206) and two other photographs are extremely similar images of Defendant's bathroom that were previously submitted as defense exhibits.

Furthermore, these photographs would not have changed the Court's analysis given the strong evidence that Defendant was making and administering chloroform. *See Church & Dwight Co., Inc. v. Abbott Labs.*, 545 F. Supp. 447, 450 (D.N.J. 2008) (finding that courts only have the discretion to consider evidence raised for the first time in the motion for reconsideration if such evidence may lead to a different result). For example, Marcinkowski told police that, when Kosnac developed an infected cyst on her rectal area that required surgery, Defendant admitted to Marcinkowski in the hospital that he learned to make chloroform on the internet and was using chloroform on Kosnac to incapacitate her in order to perform sexual acts on her. (Govt. Ex. 401 at 6). Marcinkowski also informed the police that Kosnac was worried that Defendant may have been using chloroform on their daughter as well. According to Marcinkowski, Kosnac said that their daughter "had woken up and found [Defendant] standing over her with a washcloth with his hand on the pillow" and that Kosnac "was very upset, devastated and ya know realized that all of these things could have taken place and in fact could have killed either one of them." (Govt. Ex. 103 at 7). Moreover, the police found evidence of chloroform on rags in Defendant's home and medical reports indicated that there was chloroform in Kosnac's brain and fat tissue, contributing to her death. (Govt. Exs. 303, 304). As such, the alleged new discovery would not have led to a different result because numerous pieces of information already confirmed that the judge who issued the warrant had a substantial basis to conclude that there was probable cause. *See Baer I*, 2016 WL 4718214, at *15; *see also Baer II*, 2018 WL 2045991, at *6.

Second, Defendant mainly argues that the Court should reconsider its prior ruling because he now cites to different case law.[9] (ECF No. 105 at 18-19). However, Defendant admits that

---

[9] The Court notes that Defendant heavily relies on many of the same cases that were cited in his initial suppression motion and previously considered by the Court, including, among others, *Virgin Islands v. John*, 654 F.3d 412 (3d Cir. 2011), and *United States v. Falso*, 544 F.3d 110, 122 (2d Cir. 2008). *Compare* (ECF No. 37 at 19, 20-21) *with* (ECF No. 99 at 27, 29-31).

there has not been any change in the relevant legal standards. (Hr'g Tr. at 61:9-11 (March 20, 2019)("Q: So was there a change in controlling precedent? A: No, your Honor.")). Reconsideration is permitted where there is a change in controlling precedent, not where a party merely decides to cite cases with different names but the same legal principles. *See P. Schoenfeld*, 161 F. Supp. 2d at 352 (holding that a motion for reconsideration should not be granted where the movant merely restates the law and arguments initially considered by the court). Third, the Court does not find that it disregarded or misapplied any legal authority in clear error. Therefore, Defendant does not demonstrate that any extraordinary circumstances exist here. Accordingly, the Court finds that there is no basis to reconsider its prior decisions.

Defendant claims, however, that the Court should nonetheless consider his pro se motion because he is now raising novel legal arguments that have not yet been presented to the Court. Although Defendant contends that he is raising new legal arguments, Defendant is arguing for the suppression of his electronic media—the same contention that he has now made in three prior motions throughout these proceedings. *See* (ECF Nos. 21, 53, 77). Defendant attempts to reshape his longstanding arguments by attacking other sections of the search warrant affidavit and relying on different Constitutional grounds. However, reconsideration is not warranted when a litigant merely puts a new twist on the same argument, as is the case here. *Rabreau*, 376 F. App'x at 224. Additionally, the law of the case doctrine prevents parties from raising arguments or presenting evidence that could have been raised prior to the entry of judgment. *P. Schoenfeld*, 161 F. Supp. 2d at 352. Defendant was given ample opportunity in the form of multiple motions, briefs, evidentiary hearings, and oral arguments to raise these contentions but failed to do so. Therefore, even if the Court viewed Defendant's arguments as original arguments, Defendant is still not

entitled to reconsideration. However, in the interest of justice, the Court will consider the issues raised by the pro se Defendant in his most recent suppression motion.

### 3. The Court Denies Defendant's Pro Se Motion on the Merits.

Defendant contends that the evidence at issue should be suppressed because (1) the search warrant violated his First Amendment rights, (2) the search warrant lacked particular facts necessary to support a search for child pornography and, (3) the good faith doctrine should not apply. The Court denies Defendant's pro se suppression motion on the merits.

#### a. The Relevant Search Warrant Was Based on Probable Cause and Complies with the First Amendment.

First, Defendant argues that the Court should suppress the evidence at issue because the search warrant was not supported by probable cause, in violation of his First and Fourth Amendment rights. [10] (ECF No. 99 at 31-38). Defendant contends that the search warrant violates his First Amendment rights because Sergeant Robb, the affiant, and Judge Bartlett, who issued the warrant, failed to make a content-based determination of whether the images in question depicted child pornography. *Id.* at 3-7. He relies on the Third Circuit's decision in *United States v. Pavulak* to support his argument. 700 F.3d 651 (3d Cir. 2012). In *Pavulak*, the search warrant affidavit stated that two eye witnesses had seen the defendant "viewing child pornography" but did not provide any further details about what the images depicted. *Id.* at 661. The Third Circuit concluded that there was insufficient probable cause because the judge who issued the warrant

---

[10] Although he did not use the phrase "First Amendment rights" in his original suppression motion, Defendant argued a very similar point in his prior submissions, which the Court considered in its previous ruling. In the Defendant's previous suppression motion, he argued that the police did little to further their investigation of Defendant's alleged child pornography problem and did not corroborate "th[e] layered hearsay" of Marcinkowski's statement that Defendant had a problem with "kiddy porn." (ECF No. 37 at 13, 20).

relied on the eyewitnesses' subjective and conclusory determinations that the images were in fact child pornography.[11]  *Id.*  Therefore, the Third Circuit found that where probable cause is *based on images* believed to be child pornography, the search warrant must be supported by more than the affiant's conclusion that an image qualifies as child pornography.  *Id.* at 661-62 (emphasis added).

Here, unlike in *Pavulak*, the underlying basis for the search warrant was not the content of any images.  Indeed, as Defendant admits, no witness nor law enforcement officer had viewed the images on Defendant's electronic media prior to the search warrant application.  (ECF No. 99 at 16) ("No one ever claimed that [they] saw child pornography at the Defendant[']s home.").  In fact, the purpose of the search warrant was to allow the police to view this media.  Therefore, Sergeant Robb was incapable of describing the images because he had not seen them.  Similarly, Marcinkowski provided the police with information that Defendant had a problem with "kiddy porn" but was unable to describe the child pornography because she did not observe Defendant viewing child pornography.  Accordingly, the scenario in *Pavulak* is not present here because the search warrant was not based on anyone's statement that they viewed the sought-after images and subjectively concluded that the images constituted child pornography.  As such, a First Amendment challenge is inapplicable to the search warrant in this case.

Even if *Pavulak* were to apply, the corroborated details here, such as the suspicious labels found on the electronic media, the statement of Defendant's minor daughter, and Marcinkowski's corroborated allegation that Defendant used chloroform on Kosnac, increased the likelihood that the electronic media contained child pornography.  *Cf. Pavulak*, 700 F.3d at 661 (finding that the

---

[11]     The Third Circuit in *Pavulak* ultimately concluded that the evidence in question should not be suppressed because the officers relied on the warrant in good faith.  *Pavulak*, 700 F.3d 651, 663 (3d. Cir. 2012).

corroborated details about the defendant's email account, place of work, and travel plans were unrelated to child pornography and, therefore, "did not increase the likelihood that the sought-after images contained lascivious depictions of nude minors or minors engaging in sexual acts."). Accordingly, the Court finds that Defendant's argument that the search warrant is invalid because his First Amendment rights were violated is without merit.

### b. The Underlying Search Warrant Was Sufficiently Particular and Supported with Concrete Factual Allegations.

Defendant reargues that the evidence at issue must be suppressed because the search warrant violated the particularity requirement. The Fourth Amendment requires that search warrants particularly describe the place to be searched and the persons or things to be seized. U.S. Const. amend. IV; *see also United States v. Yusuf*, 461 F.3d 374, 393 (3d Cir. 2006). Therefore, there must be some evidence that ties criminality to a specific location and to specific crimes. *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983); *Yusuf*, 461 F.3d at 393. In his pro se motion, Defendant makes three arguments as to particularity.

First, Defendant avers that the affidavit's only link between Defendant and child pornography is Sergeant Robb's statement that based on his education and experience, "persons sexually attracted to younger children tend to collect and save child pornography in many forms such as computer image files." (ECF No. 99 at 31). The Court finds Defendant's argument unavailing. At the time of the search warrant application, law enforcement officials were aware of allegations that Defendant had a problem with "kiddy porn," which directly supports a search

19

for child pornography. Second, the labels on the electronic media—"incriminating pics,"[12] "Derrick's eyes ONLY" and "porn"—reinforced the police's belief that the labeled media may have contained child pornography. (Second Tr. at 101, 127); *see also United States v. Miknevich*, 638 F.3d 178, 185 (3d Cir. 2011) (explaining that a computer file's name may be detailed enough "so as to permit a reasonable inference of what the file is likely to depict."). Moreover, Defendant's minor daughter's statement that she once woke up to Defendant standing over her with a wash cloth further suggested to police that Defendant may have been using chloroform on children in a sexual manner, given the chloroform discovered in the home and the corroborated allegation that he was using chloroform on Kosnac. (Second Tr. at 110-11, 125, 128, 129-32). Based on all of this information, the Court concludes that there were sufficiently particular facts to support the search for child pornography.

Second, Defendant argues that, because the only allegation in the affidavit referencing "kiddy porn" strictly referred to pornography in the form of pictures and books, the search warrant was overly broad in including Defendant's computer. *Id.* at 12-13. Here, the large quantity of electronic media and the suspicious labels led the police officers to believe that Defendant's electronic devices may have contained child pornography. (Second Tr. at 101, 127). Marcinkowski's reference to pictures and books, instead of digital images, does not weaken law enforcement's determination that Defendant's computer may have contained child pornography. As noted by this Court in reference to Defendant's prior identical argument, pictures and books

---

[12] At the oral argument on March 20, 2019, Defendant noted that the photos found in the disk labeled "pics incriminating" depicted drugs use, "[w]hich would be incriminating pictures." (Hr'g Tr. at 71:9-15 (March 20, 2019); DBAER000815; DBAER000821; DBAER000825; DBAER000826; DBAER000827). The Court discerns that Defendant made this statement to show that law enforcement was wrong to believe that the disk may have contained child pornography or information about chloroform. The fact that the disk labeled "pics incriminating" contained photographs of drug use does not undermine law enforcement's reasonable inference that the disk may have contained evidence related to child pornography or homicide given the circumstances.

are often stored on one's electronic media. *Baer I*, 2016 WL 4718214 at \*16 n.8. Accordingly, the Court finds that there were enough particularized facts to support law enforcement's belief that Defendant's computer may have contained child pornography.

Lastly, Defendant contends that the information tying him to child pornography was stale because Marcinkowski stated to police that Defendant had a problem with child pornography "several years ago." (ECF No. 99 at 26-27). However, the police corroborated this information with many fresh, additional facts that strengthened their belief that Defendant may have possessed child pornography at the time of the search warrant application. *See United States v. Tehfe*, 722 F.2d 1114, 1119 (3d Cir. 1983). For example, law enforcement's discovery of the labeled electronic media and Marcinkowski's other allegations, taken together with the results of the police investigation, provided further support that evidence of criminality may have been on Defendant's electronic media at the relevant time. (Second Tr. at 101, 127, 129-32).

Moreover, although staleness is a factor in determining probable cause, the Court must also consider the nature of the crime and the evidence at issue. *United States v. Harvey*, 2 F.3d 1318, 1322 (3d Cir. 1993). Courts have consistently found that child pornography is a "continuing offense" and therefore older information may support probable cause. *See, e.g., United States v. Zimmerman*, 277 F.3d 426, 434 (3d Cir. 2002) ("Presumably individuals will protect and retain child pornography for long periods of time because it is illegal and difficult to obtain."); *Harvey*, 2 F.3d at 1322 (concluding that the information in the search warrant was not stale because collectors of child pornography rarely dispose of their collections); *United States v. Lacy*, 119 F.3d 742 (9th Cir. 1997) (finding that information regarding child pornography was not stale and placing "significant weight on expert opinion indicating that collectors of child pornography rarely if ever dispose of such material and store it for long periods in a secure place, typically in their

homes"); *United States v. Koelling,* 992 F.2d 817, 819-20, 23 (8th Cir. 1993) (warrant containing statement that "pedophiles . . . keep [child pornography] for many months and years, and rarely, if ever, dispose of their collections" upheld). As such, the Court concludes that the search warrant was sufficiently particular and denies Defendant's motion to suppress on particularity grounds.

### c. *The Good Faith Exception Properly Applies.*[13]

Defendant contends that the authors of the search warrant affidavit recklessly or knowingly omitted information and, therefore, should not be protected by the good faith doctrine. Specifically, Defendant contends that Sergeant Robb was aware of photographic evidence that Defendant and Kosnac previously painted the bathroom in their home and that Sergeant Robb acted in bad faith when he failed to include this information, which Defendant argues would have explained his minor daughter's allegation that she woke up to Defendant standing over her with a washcloth that smelled like paint. The Court disagrees.

The Third Circuit has opined that "[a]ll storytelling involves an element of selectivity" and courts "cannot demand that police officers relate the entire history of events leading up to a warrant application with every potentially evocative detail." *Wilson v. Russo,* 212 F.3d 781, 787 (3d Cir. 2000). As such, omissions are made with reckless disregard only if an officer withholds a fact that a reasonable person would have known "was the kind of thing the judge would wish to know." *Id.* at 788. Sergeant Robb's omission of these photographs was not made with reckless disregard because, given the circumstances, it was reasonable to conclude that this information would be unremarkable to a judge considering the matter. Despite Defendant's claim that the photographs demonstrate that the bathroom was "in the process of being painted" when the police searched his

---

[13]    Defendant's additional contentions regarding the good faith exception were entirely and extensively addressed in the Court's prior decisions, as discussed throughout this Opinion.

home, (ECF No. 99 at 22), the photographs do not support his contention in a way that would affect a probable cause analysis.[14]

The photograph of the bedroom shows no evidence of painting, as there are no paint brushes, rollers, trays, tarps, or cans of paint visible. (DBAER000711). The bathroom photographs show tape on the shower walls and uncovered outlets, but no other possible indications of an active painting project. (DBAER000653; DBAER000654; DBAER000657; DBAER000668). Rather, the photographs show hair and dental care products covering the bathroom counters next to the walls, and the shower shelves are filled with body wash, shaving cream, shampoo and the like, signifying that the bathroom was being utilized normally and refuting Defendant's claim that painting was in progress in the photo depiction. *Id.* One photograph shows a cleaning supply closet with a white canister, which may or may not contain paint, in the back of the closet partially covered by a package of toilet paper and other household cleaning supplies. (DBAER000671). The Court finds that it was reasonable for Sergeant Robb to conclude that these photographs would not be important to the judge's determination of probable cause, given all of the other evidence presented and the negligible value of these images. Therefore, Sergeant Robb did not recklessly omit this photographic evidence.

Even if, assuming *arguendo*, Sergeant Robb did recklessly omit this information, the Court finds that this was not a material omission. To determine whether an omission is material, the

---

[14]     As discussed above, the Defendant provided the Court with six photographs during oral argument, upon which the Court relies: DBAER000653; DBAER000654; DBAER000657; DBAER000668; DBAER000671; DBAER000711. *See supra* at 13-14. Defendant's motion also references photos "DCS_0071 – DCS_0100," which do not match the bates numbers for any of the photos provided by Defendant at the oral argument and do not appear to correspond to any other images the Court has in the record. *See* (ECF No. 99 at 22). While the Court can only rely upon the photographs in this case's record and those supplied to the Court, to the extent the DCS prefix pictures depict painting supplies or other clearer evidence of painting, the probable cause analysis would remain the same for the reasons discussed herein.

Court must insert the omitted facts and then decide whether this modified affidavit would establish probable cause. *See United States v. Eberle*, 266 F. App'x 200, 205 (3d Cir. 2008) (denying suppression motion because the officer's omission of information about a previous unsuccessful search of a computer that was supposedly used by the defendant was immaterial to probable cause). Here, a search warrant affidavit that included this omitted information would have established probable cause because the affidavit contained a significant amount of other evidence. This includes information specifically relating to Defendant's daughter's allegation, such as the police's discovery of jars containing rags in Defendant's home, lab results confirming that these rags contained chloroform, and an autopsy report concluding that chloroform was found in Kosnac's body. In addition to Defendant's daughter's allegation, Marcinkowski told police that Kosnac was concerned that Defendant may have been using chloroform on their daughter because the daughter "had woken up and found [Defendant] standing over her with a washcloth with his hand on the pillow." (Govt. Ex. 103 at 7); *see also Illinois v. Gates*, 462 U.S. 213, 241 (1983) (finding that even "an affidavit relying on hearsay is not to be deemed insufficient on that score, so long as a substantial basis for crediting the hearsay is presented"). Thus, even with the information about the photographs of Defendant's home, the judge who issued the warrant had a substantial basis to find probable cause. Therefore, as previously concluded, the Court finds that Sergeant Robb acted in good faith and suppression is not appropriate.

Furthermore, Defendant again relies on the First Amendment to reargue that the good faith exception should not apply. (ECF No. 99 at 16-17). Defendant writes that the warrant in the instant case was so facially deficient that it failed to particularly identify the place to be searched or things to be seized, especially in light of the fact that "[a] warrant's particularity is heightened when the materials sought are protected by the First Amendment." (ECF No. 99 at 17) (citing

*Zurcher v. Stanford Daily*, 436 U.S. 547 (1978)). First, as Defendant acknowledges, child pornography is unprotected by the First Amendment. (Hr'g Tr. at 55:15-17 (March 20, 2019)); *see also New York v. Ferber*, 458 U.S. 747 (1982). Additionally, as the Court concluded above, Defendant's First Amendment rights were not implicated here because the search warrant application was not based on anyone's subjective interpretation of any images. *Pavulak*, 700 F.3d at 661. Even if the principles established in *Pavulak* were relevant to the instant case, the Third Circuit held in *Pavulak* that the evidence should not be suppressed because the officers relied on the warrant in good faith. *Id.* at 663. The Court concluded in its prior opinions, and restates now, that the officers acted in good faith. *Baer I*, 2016 WL 4718214, at *12; *Baer II*, 2018 WL 2045991, at *6. Therefore, Defendant's First Amendment argument is without merit and the Court holds that suppression is not warranted.

III. **MOTION TO DISMISS THE INDICTMENT**

Defendant filed his pro se motion to dismiss the indictment pursuant to the Speedy Trial Act of 1974, the Sixth Amendment to the United States Constitution, and Federal Rule of Criminal Procedure 48(b) on February 28, 2019. (ECF No. 115). The Government filed its opposition on March 4, 2019 and a supplemental letter brief in opposition on March 7, 2019. (ECF Nos. 119, 126). Defendant filed his pro se reply on March 8, 2019, and a supplemental pro se reply on March 12, 2019. (ECF Nos. 128, 133).

A. **PROCEDURAL BACKGROUND**

This matter is as complex procedurally as it is factually, with a very active docket and voluminous motions both in number and in size. Given the unique background of the case and the investigations conducted by both the state and federal government, Defendant's counseled and pro se motions have required the Court to deeply engage with evidentiary questions and constitutional

25

analyses, as well as more typical pretrial motions. Likewise, the *in limine* motions brought by the Government reflect the complexities in this case. Almost all motions have required oral argument, supplemental briefing, or both.

In total, from the period following his arraignment to the date of this opinion pre-trial, the Defendant has appeared before this Court for a total of fifteen (15) days on a variety of matters: evidentiary hearings, oral arguments, status conferences, an attorney appointment hearing, a *Frye* hearing, and a *Faretta* hearing. (ECF Nos. 22, 34-36, 39, 47, 59, 73, 94, 95, 98, 106, 116, 134, 141). In addition to motions and hearings, nine orders to continue were entered in this matter, eight of which were jointly applied for by the Government and Defendant's counsel. (ECF Nos. 19, 20, 23, 27, 30, 49, 52, 63, 140).

## B. SPEEDY TRIAL ACT CLAIMS

The Speedy Trial Act requires that the trial of a criminal defendant begin within seventy (70) days of the filing of the indictment or the date of the defendant's first appearance before a judicial officer, whichever occurs later. 18 U.S.C. § 3161(c)(1). When computing the time within which trial must commence under the Act, certain periods of time are automatically excluded. One such exclusion is for "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161(h)(1)(D). The exclusion covers "all time between the filing of a motion and the conclusion of the hearing on that motion, whether or not a delay in holding that hearing is 'reasonably necessary.'" *Henderson v. United States*, 476 U.S. 321, 330 (1986). It also excludes "time after a hearing has been held where a district court awaits additional filings from the parties that are needed for proper disposition of the motion." *Id.* at 331. Another exclusion is for "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding

concerning the defendant is actually under advisement by the court." 18 U.S.C. § 3161(h)(2). Additionally, any period of delay resulting from a continuance granted by a judge "on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government" shall also be excluded so long as "the judge granted the continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(a).

### 1. Speedy Trial Clock Timeline and Calculation

Under the Court's own assessment of the Speedy Trial clock ("STC"), the Court finds that the time from the Defendant's indictment to the present does not exceed seventy (70) days. The indictment in this matter was filed on August 20, 2015 and the Defendant was arraigned on September 9, 2015. (ECF Nos. 16, 17). The Court calculates that there are five (5) periods of time which cannot be excluded from the STC based on 18 U.S.C. § 3161(h).[15]

The STC was running for nineteen days (19) between the Indictment and September 9, 2015 when an Order to Continue was granted based on joint application of the Government and Defendant's counsel. (ECF No. 19). On October 23, 2015, prior to the expiration of the first continuance, another Order to Continue was filed based on a joint application, which tolled the STC until December 31, 2015. (ECF No. 20). While the October 23, 2015 Order to Continue was still in effect, the Defendant filed an Omnibus Motion,[16] (ECF No. 21) for which an evidentiary hearing and oral argument were held on July 12-13, and 28, 2016. (ECF Nos. 35, 36, 39).

---

[15] The Court notes that items which did not materially influence calculation of the STC have been omitted from this recitation.

[16] Defendant's Omnibus Motion sought to compel disclosure of certain evidence, suppression of evidence seized, and evidentiary hearings to determine: (1) whether consent to search Defendant's residence was voluntarily made or valid, (2) the admissibility of Defendant's statements to law enforcement, and (3) whether suppression of evidence was warranted. *See generally* (ECF No. 21).

Supplemental briefing was provided on August 3, 2016. (ECF No. 40). Defendant's Omnibus Motion was under advisement by the Court for thirty days until September 2, 2016, at which point the STC began running again on September 3, 2016.

On September 16, 2016, after thirteen (13) days had been added to the STC, the Court and the Government received an email from Defendant's counsel stating that Defendant asked his counsel "to relay to the Court that he would like an opportunity to be heard" and that it was his counsel's belief that the Defendant will "be making a request for new counsel," (ECF No. 126, Ex. 1 at 15), which again stopped the STC. In response to that email, the Government filed a formal motion for a status conference on September 19, 2016 to determine whether the Defendant wanted to appoint new counsel. (ECF No. 44). On October 3, 2016, Defendant filed three pro se items:[17] a motion for a pretrial *Franks* hearing, a supplemental brief in support of a motion to suppress evidence, and a motion for a subpoena *duces tecum* related to certain police department and telephone records. (ECF No. 126, Ex. 2 at 17-34). Defendant received a new attorney at a hearing on October 11, 2016. (ECF No. 47, 48). The time between the September 16, 2016 email and the hearing would therefore be excluded, and an excludable thirty-day advisement period began as to Defendant's pro se motions on October 3, 2016. While the advisement period was tolling the clock, another Order to Continue based on a joint application was filed on October 20, 2016. (ECF No. 49). The continuance expired on December 31, 2016, at which point no motions were tolling the clock and it began to run again.

---

[17] Defendant's motions are dated September 23, 2016, and postmarked September 29, 2016. The Court considers the filing date as the date on which the envelope was received and stamped by the Court, October 3, 2016. Looking to the prison mailbox rule, there are circumstances where the Court can use the date Defendant signed and dated the motion as the filing date. *See Terrell v. Benfer*, 492 F. App'x 74, 75 n.1 (3d Cir. 2011). In this instance, the STC analysis is the same using any of the three dates.

After four (4) more days were added to the STC, a subsequent Order to Continue was filed based on joint application on January 5, 2017. (ECF No. 52). During the pendency of that continuance, the Defendant, through counsel, filed a Motion for a *Franks* Hearing on February 28, 2017. (ECF No. 53). Oral argument on that motion was heard on July 27, 2017, (ECF No. 59), and a supplemental filing by Defendant's counsel was made on August 4, 2017 (ECF No. 61). The Motion for a *Franks* Hearing was then under advisement until September 3, 2017, at which point the STC began to run again on September 4, 2017.

The STC ran for a total of seven (7) days before the Government filed a motion to continue on September 11, 2017 that tolled the clock. (ECF No. 62). The continuance order was issued on September 28, 2017, based on the reasons set forth in the Government's submission: "to permit counsel for the defendant a reasonable amount of time to review the facts of the case, including the electronic evidence in the Government's possession, to engage in potential plea negotiations, and effectively prepare for trial" and "to allow for a reasonable amount of time for the Court to review information presented by the defendant and the Government" including new information presented at the previous oral argument. (ECF No. 63). The continuance lasted until November 30, 2017, however prior to that date Defendant filed another omnibus motion on November 16, 2017, which held the clock. (ECF No. 64).

Oral argument was heard on the omnibus motion on April 13, 2018, and a related opinion was issued within the advisement period, on May 10, 2018. (ECF Nos. 73, 78). That same day, Defendant filed a motion for reconsideration of the *Franks* hearing denial. (ECF No. 77). There was no argument on the reconsideration motion and the last brief on the issue was submitted on June 14, 2018, at which point the advisement period ran for thirty days until July 14, 2018. (ECF No. 83).

Following the advisement period, twenty-six days (26) ran against the clock from July 15, 2018 through August 9, 2018, without any items pending or otherwise tolling the clock. On August 10, 2018, the Government filed their first motion in *limine*, followed by Defendant's cross-motion to suppress evidence on September 17, 2018. (ECF Nos. 88, 90). Both motions have required several rounds of supplemental briefing and two oral arguments, which concluded with the second oral argument on March 5, 2019. (ECF No. 134). A related *Cunningham* hearing request culminated in a *Cunningham* hearing and letter briefing, which concluded on March 13, 2019. (ECF Nos. 125, 116, 136). The opinion covering these issues was issued within the advisement period at a hearing on March 20, 2019. (ECF No. 141).

Several other motions filed during the same time period have served to toll the clock, including through the date of this opinion: Defendant's pro se suppression motion filed on November 2, 2018 (ECF No. 99), Defendant's current pro se motion to dismiss his indictment at issue here filed on February 28, 2019 (ECF No. 115), and the Government's second and third motions *in limine*, filed on March 4 and 21, 2019, respectively. (ECF Nos. 122, 139). In addition to these motions tolling the STC, a continuance jointly applied for by the Government and Defendant will hold the clock until the start of jury selection on March 27, 2019, in order for the parties to "explore a potential resolution of the pending matter short of a jury trial." (ECF No. 140 at 1).

Based on the Court's computation of the clock as outlined above, the STC has not exceeded seventy days. The Court finds that there were five (5) periods of non-excludable time: 19 days from August 21 through September 8, 2015; 13 days from September 3 through September 15, 2016; 4 days from January 1 through January 4, 2017; 7 days from September 4 to September 10, 2017; and 26 days from July 15 through August 9, 2018, for a total of sixty-nine (69) days on the

clock. The Government's calculation is essentially the same, but allows for an additional two-day reduction of the clock based on a notice of motion filed by the Government.[18] *See* (ECF No. 126, Ex. A at 1). Excluding this two-day period would reduce the Court-calculated STC total to sixty-seven (67) days, however the Court need not opine on whether this time should be excluded because the STC is below seventy days without excluding that time. The Court therefore finds that the Speedy Trial Act requirements have not been violated.

### 2. Defendant's Arguments

Defendant's two main arguments for noncompliance with the STC are based on (1) accounting of the STC based on time limits set under the District of New Jersey Plan for Prompt Disposition of Criminal Cases, referred to as "Appendix J," and (2) the inclusion of an email and three of Defendant's pro se motions as excludable time. (ECF No. 115 at 4-11; ECF No. 133 at 1-3). The Court disagrees with Defendant's calculations and reading of excludable time.

As discussed above, the Speedy Trial Act governs excludable time for purposes of calculating the STC. Consistent with the vision of Congress that district courts be able to enact their own plans on the administration of the Speedy Trial Act, the District of New Jersey adopted its Plan for Prompt Disposition of Criminal Cases in June 1980, which was most recently amended in March 2010. N.J. Fed. Prac. Rules, Appendix J (2019 ed.); *see also* 18 U.S.C. § 3166. Defendant contends that the plan must be used to calculate the STC to determine whether dismissal of his indictment is required. (ECF No. 115 at 8-10).

---

[18] The Government's STC calculation excludes time for their first *in limine* motion starting on August 8, 2018, when the notice of motion was filed, (ECF No. 87) even though the related motion itself was filed on August 10, 2018. (ECF No. 88); *see United States v. Wong*, 40 F.3d 1347, 1371 (2d Cir. 1994) ("Nothing in either the Federal Rules of Criminal Procedure or the [local] Criminal Rules . . . suggests that a motion would not be deemed filed on the date the notice of motion is filed.").

Nevertheless, Appendix J cannot be a basis for finding a violation unless the Act itself was violated. *Compare* N.J. Fed. Prac. Rules, Appendix J 10(a) (2019 ed.), *with* 18 U.S.C. §3161(h). In the sanctions portion of the plan, under the subheading of "Dismissal or Release from Custody" it states that

> Failure to comply with the requirements of Title 1 of the **Speedy Trial Act** may entitle the defendant to dismissal of the charges against him or her or to release from pretrial custody. **Nothing in this Plan shall be construed to require that a case be dismissed or defendant released from custody in circumstances in which such action would not be required by 18 U.S.C. §§ 3162 and 3164.**

N.J. Fed. Prac. Rules, Appendix J 10(a) at 717 (2019 ed.) (emphasis added); *accord United States v. Simmons*, 812 F.2d 818, 820-21 (2d Cir. 1987) (finding "sanction of dismissal would not be required even if [district court] plan was violated" where sanctions language was identical to Appendix J and "absence of the ultimate weapon of dismissal does not mean that the pretrial provisions of the plan are valueless").[19] Sanctions for noncompliance with the time limits in the

---

[19] Defendant relies heavily on *United States v. Felton*, 811 F.2d 190 (3d Cir. 1987). (ECF No. 115 at 10; ECF No. 128 at 1). However, *Felton* compels the denial of his motion. *See* 811 F.2d at 210 (denying the defendant's motion to dismiss on speedy trial grounds). *Felton* acknowledges that "specific time limits for action under subsection (F)," currently subsection (D), of the Speedy Trial Act and any impact on sanctions must be determined by the local rules. *Id.* at 200. Appendix J 6(a) of the New Jersey local rules provides in part that when "determining excludable time under 18 U.S.C. § 3161(h)(1)(F), 90 days will be the maximum time excluded, unless the Court orders a hearing on the motion or additional extensions of time for filing briefs are specifically allowed by the Court." That is not the end of the inquiry. Appendix J also makes clear that the periods set forth in 18 U.S.C. § 3161(h), including the 30-day advisement period, shall be excluded when computing time. Most importantly, Appendix J expressly states that the time limitations in the plan shall not be grounds for dismissal unless otherwise warranted under the Speedy Trial Act itself.

The Court further notes that a plain reading of the portion of Appendix J 6(a) that concerns the 90-day period does not correspond to the pretrial motion section of excludable time in the Speedy Trial Act, but references 18 U.S.C. § 3161(h)(1)(F), which is for "delay resulting from transportation of any defendant." The Court surmises that the inconsistency is due to the Speedy Trial Act amendment in October 2008, which moved the pretrial motions exclusion previously at 18 U.S.C. § 3161(h)(1)(F) to subsection (h)(1)(D), although the District Plan, Appendix J, has not been updated to reflect such change in more than a decade. *See* Pub. L. No. 110-406, § 13, 122 Stat. 4291 (2008).

Speedy Trial Act are set forth at 18 U.S.C. § 3162(a)(2), and that section only calls for dismissing the indictment when more than seventy days have passed after accounting for excludable time in the Act under 18 U.S.C. §3161(h). The Court has therefore analyzed the alleged speedy trial violation solely based on the Speedy Trial Act.

Moving on to Defendant's arguments about excluding time based on an email and three pro se motions, the Court is likewise not persuaded. Defendant contends that the email from his counsel, sent to the Court and the Government, was sent after "business hours" on a Friday at 6:02 p.m. and therefore cannot serve to toll the clock until the following Monday. (ECF No. 133 at 1). Defendant does not cite to, nor is this Court aware of, any authority in the Speedy Trial Act that restricts the time of day a motion must be received for it to toll the clock. Furthermore, "lack of formality does not preclude" the request "from attaining, for Speedy Trial Act purposes, the status of a pretrial motion." *United States v. Arbelaez*, 7 F.3d 344, 347 (3d Cir. 1993).

Defense counsel's email stated that Defendant asked him to relay to the Court that "he would like an opportunity to be heard" and that counsel believed Defendant would "be making a request for new counsel." (ECF No. 126, Ex. B1 at 15). In response to this request, the Government filed a motion the following Monday asking for a status conference to address the issue. (ECF No. 44). In *United States v. Arbelaez*, as is the case here, the submission "was similar enough to a motion, both in context and in content" and "the government, in good faith, treated the request as a motion." *Arbelaez*, 7 F.3d at 348. The Court therefore finds the email to be an excludable motion pursuant to 18 U.S.C. § 3161(h)(1)(D).

Defendant further disputes that his pro se motions submitted to this Court on October 3, 2016 toll the STC. (ECF No. 133 at 1-2). Defendant argues that the Court "refus[ed] to even docket such submissions," that the Government fails to point out when the "undocketed" pro se

motions were submitted to the Court, and claims that the Court "already rejected these submissions on July 28, 2016." *Id.* The Government counters with caselaw demonstrating that even where a defendant is represented by counsel and no action is taken on a motion, it is properly counted as excludable time for Speedy Trial Act purposes. *See United States v. Villalobos*, 560 F. App'x 122, 125, 126 n.3 (3d Cir. 2014) (finding a pro se letter was "functionally a motion requesting intervention" and stopped the clock from when it was filed, although the defendant was represented at the time and the submission "was not actually considered by the District Court").

The Court notes for the record that it never expressly rejected or refused to docket any submissions from the Defendant. At the hearing on July 28, 2016, Defendant stated that he had "prepared motions pro se" which he "wish[ed] to submit to the court." (ECF No. 45 at 125:10-11). The Court, concerned with a potential breakdown of communication between the Defendant and his counsel, provided some time for Defendant and his counsel to "see if there's anything that you might want to talk about that might resolve your current issue before you present it." *Id.* at 128:9-11. Following a brief recess, Defendant's counsel relayed that Defendant wanted to "pursue further motions" and Defendant's counsel team "indicated to him that [they] will not be pursuing those motions" and that Defendant "would request to go pro se . . . or to fire" his counsel. *Id.* at 128:24-129:4. The Court stated that it would provide Defendant with "some time to consider [his] position" and ultimately Defendant determined that he "wish[ed] to go pro se if need be, pending the results of th[e] [evidentiary] hearing." *Id.* at 131:9-10. In light of the Defendant's request to await the results of the hearing before making a determination on whether he wished to proceed with his counsel, the hearing concluded with Defendant's counsel requesting some time to "sit down when we have an opportunity with Mr. Baer and see where things stand." *Id.* at 131:7-20.

34

Almost two months later, in mid-September, the Court received the email motion from Defendant's counsel discussed above, requesting an opportunity to be heard regarding counsel. In between the time of that email and the attorney appointment hearing, the Court received an envelope on October 3, 2016 containing three pro se motions: a motion for a *Franks* hearing, a suppression motion, and a motion for a subpoena *duces tecum*. *See* (ECF No. 126, Ex. 2), Ex. A to this Opinion. Defendant's pro se motions are therefore proper pretrial motions for purposes of excludable time. *See Bloate v. United States*, 559 U.S. 196, 2016 (2010) (exclusion is "automatic[]" upon filing of the motion); *United States v. James*, 712 F. App'x 154, 164 (3d Cir. 2017) ("Nowhere does the statute distinguish between pro se motions and motions filed by counsel, or between meritorious and frivolous motions.") (quoting *United States v. Williams*, 557 F.3d 943, 951 (8th Cir. 2009)).

To the extent Defendant's motion seeks to claim a violation of the Speedy Trial Act based on continuances granted without his approval, that argument fails. Eight of the nine continuances in this matter were jointly requested by the Defendant's counsel and the Government. (ECF Nos. 19, 20, 23, 27, 30, 49, 52, 140). The Speedy Trial Act expressly states that an "ends of justice" continuance may be "granted by any judge on his own motion or at the request of the defendant **or his counsel** or at the request of the attorney for the Government." 18 U.S.C. § 3161(h)(7)(A) (emphasis added). Defendant's express authorization is not required, and the consent of Defendant's counsel therefore properly excluded the periods covered in those eight continuances from the STC. *See United States v. Green*, 516 F. App'x 113, 122 (3d Cir. 2013).

The one continuance granted solely on application of the Government in September 2017 tolled the clock from the date of issue on September 28, 2017 until Defendant's omnibus motion was filed on November 16, 2017. *See* (ECF Nos. 63, 64). The reasons provided for the

continuance were "to permit counsel for the defendant a reasonable amount of time to review the facts of the case, including the electronic evidence in the Government's possession, to engage in potential plea negotiations, and effectively prepare for trial" and "to allow for a reasonable amount of time for the Court to review information presented by the defendant and the Government" including new information presented at the previous oral argument. (ECF No. 63). In granting that continuance, the Court found that the "ends of justice served by the granting of th[e] continuance outweigh the best interests of the public and the defendant in a speedy trial," as required by the statute. *Id.* at ¶ 4; *see also* 18 U.S.C. § 3161(h)(7)(A).

The reasons provided for the continuance were, and remain today, valid reasons for needing additional time. First, the electronic evidence in this matter is highly sensitive and the Government maintains electronic evidence that contains alleged child pornography. Therefore, to the extent the Defendant needed to review certain files, it is a more involved process to review such discovery than in a typical case. Second, new allegations against the Defendant in March 2017 resulted in the search of an additional hard drive, the Seagate Drive, in October 2017, which was determined to contain more images of child pornography. (ECF No. 88 at 5). Lastly, while the Court is not involved in or privy to any plea negotiations between Defendant and the Government, the Government did subsequently extend a formal plea offer to the Defendant (ECF No. 82 at 1), for which the Court held a *Frye* hearing following Defendant's rejection of that offer. (ECF No. 94). Given all of this information, the Court still finds that the "ends of justice served by granting th[e] continuance outweigh[ed] the best interests of the public and the defendant in a speedy trial." *See* (ECF No. 63 at ¶ 4); *see also* 18 U.S.C. § 3161(h)(7)(A). The Court therefore finds that all continuances granted in this matter are valid under the Speedy Trial Act and properly tolled the STC.

## C. SIXTH AMENDMENT CLAIMS

Defendant alleges that his Sixth Amendment rights to a speedy trial were violated. (ECF No. 115 at 11-19). The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. Amend. VI. The right of a speedy trial is necessarily relative and depends upon the circumstances. *Barker v. Wingo*, 407 U.S. 514, 522 (1972). As the Sixth Amendment "does not require that a trial commence within a specified time," the protections of the Speedy Trial Act exceed those of the Sixth Amendment. *United States v. Lattany*, 982 F.2d 866, 870 n.5 (3d Cir. 1992). The Court has already found that the Defendant's Speedy Trial Act rights were not violated, however it will proceed nonetheless with a Sixth Amendment analysis.

In *Barker v. Wingo,* the Supreme Court refused to quantify the right into "a specified number of days or months" or to hinge the right on a defendant's explicit request for a speedy trial. 407 U.S. at 523. Rejecting such "inflexible approaches," *Barker* established a "balancing test, in which the conduct of both the prosecution and the defendant are weighed." *Id.* at 530. In conducting this balancing test, courts must weigh (1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. *Id. Barker* instructs that "different weights should be assigned to different reasons" and that no one factor is dispositive or "talismanic." *Id.* at 531-533. However, "[t]he most important factor is prejudice." *Hakeem v. Beyer*, 990 F.2d 750, 760 (3d Cir. 1993).

First, the Court will analyze the length of the delay. According to *Barker*, the length of the delay is "to some extent a triggering mechanism." That is, "until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." The length of incarceration from Defendant's arrest until trial is sufficient to trigger

examination of the other factors of the balancing test, however the delay must be reviewed through the lens of the circumstances of this case. *Id.*

Looking to the second and third factors, the Court finds that the reason for the delay and the timing of Defendant's assertion of the right weigh against Defendant. All "delays caused by defense counsel are properly attributed to the defendant, even where counsel is assigned." *Vermont v. Brillon*, 556 U.S. 81, 94 (2009). Here, Defendant has filed repetitive motions and demanded reconsideration of denied motions. The numerous motions were accompanied by voluminous amounts of briefing and requests for hearings. The periods of time required to brief these motions and for the Court to consider them—particularly where the Defendant insisted on supplementing motions with pro se submissions—weigh against the Defendant. *See United States v. Loud Hawk*, 474 U.S. 302, 316-17 (1986) ("Having sought the aid of the judicial process and realizing the deliberateness that a court employs in reaching a decision, the defendants are not now able to criticize the very process which they so frequently called upon.") (internal citation and quotation marks omitted).

The record is clear that much of the delay was due to Defendant's insistence on filing motions or taking actions which significantly delayed proceedings. In addition to the delay caused by considering Defendant' various motions, his change in counsel and filing additional pro se motions directly before scheduled trial dates led to further significant delay. *See Hakeem*, 990 F.2d at 764 (noting the "difficulties that a trial court faces in case management when a criminal litigant attempts to act independently of his counsel"). "Just as a State's deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the State, so too should a defendant's deliberate attempt to disrupt proceedings be weighted heavily against the defendant." *Brillon*, 556 U.S. at 93-94 (internal citations and quotation marks omitted).

Defendant's vacillation on whether to terminate counsel, appoint new counsel, or go pro se necessarily contributed to the overall pre-trial delay. In July 2016, the Court gave the Defendant and his counsel team some time to consider whether to pursue further motions at the Defendant's insistence or to request a new counsel appointment. (ECF No. 45 at 128:24-129:4). In September 2016, the Court became aware of Defendant's request for new counsel. (ECF No. 126, Ex. B1 at 15). A hearing for appointment of new counsel was held in October 2016, where Defendant's prior co-counsel were replaced with his current counsel. (ECF No. 47). Defendant's previous counsel relayed to the Court that "it's Mr. Baer's position at this time that he continues in his desire to pursue these other pretrial motions and he would like other counsel appointed to represent him." (Hr'g Tr. at 3:1-4 (Oct. 11, 2016)).

In October 2018, Defendant again equivocated on wanting to "go pro se" and the Court held a *Faretta* hearing in response. (ECF No. 95, 98). Defendant declined to represent himself at that time but still wished to "file a pro se motion," although his counsel represented to the Court that Defendant's counsel did not intend to make any further filings. (ECF No. 109 at 18:16-20:2). At the time of the *Faretta* hearing, a firm trial date had been set for December 3, 2018, (ECF No. 84), and this Court informed the Defendant that "the Court is ready to go to trial in the beginning of December, as . . . are all counsel in the case. But to the extent you elect to go pro se, that is where I'm considering altering the schedule, to provide you sufficient time to prepare your case in this matter." (ECF No. 109 at 24:2-7). The Defendant responded that he "understand[s] that" and that he also understood that "motions toll the clock." *Id.* at 24:2-9.

In light of the discussions about the Defendant seeking to proceed pro se and time required to consider his pro se motion, the Court rescheduled the trial date to commence on March 14, 2019. However, again on the eve of trial, on February 28, 2019, Defendant filed this motion to dismiss

the indictment, (ECF No. 115), requiring the Court to again move the trial, to March 25, 2019, to accommodate a briefing schedule. (ECF No. 131). At oral argument on March 20, 2019, Defendant's trial date was once more rescheduled, until the current trial date of March 27, 2019, based on a request by both parties to "explore a potential resolution of the pending matter short of a jury trial." (ECF No. 140 at 1).

In looking at the factor of Defendant's assertion of his Sixth Amendment rights, a "reasonable assertion of the speedy trial right" must be shown, which is satisfied by "some formal motion . . . to the trial court." *Hakeem*, 990 F.2d at 764-65. However, even multiple assertions of that right "are reduced in weight" by circumstances such as "their proximity to trial" and Defendant's "unreadiness for trial." *Id.* at 766. "Where cognizable speedy trial assertions occur shortly before trial, other courts have given minimal weight to such claims." *Id.* at 765. Furthermore, Defendant's motion is "reduced by his apparent unreadiness to proceed to trial at any of the times he asserted the right" and his request is accorded minimal weight because his contrary actions have evidenced an "unwillingness to commence with the trial as requested." *Id.*; *see also Loud Hawk*, 474 U.S. at 314-315. On the eve of trial, both in November of last year and at the end of last month, it was Defendant's own actions that prevented trial from commencing as quickly as possible. *See Hakeem*, 990 F.2d at 765-66 ("When an incarcerated individual demands a trial, he should be prepared for that trial. Evidence to the contrary weighs against a speedy trial violation.").

In total, very little of the pretrial delay can be attributed to the Government. Eight continuances in this matter were jointly applied for by Defendant's counsel and the Government. The one continuance granted on application of the Government was properly granted, and the Court rejects the allegations made by Defendant that the Government's motivations for requesting

such continuance were a "tactical delay . . . to gain advantage by obtaining additional evidence." *See supra*, III.B.2 at 35-36 and ECF No. 128 at 2-3.

Lastly, the Court finds that Defendant's assertion of prejudice does not support a Sixth Amendment violation. While it is true that "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify," the "speedy trial standards recognize that pretrial delay is often both inevitable and wholly justifiable." *Doggett v. United States*, 505 U.S. 647, 655-56 (1992) (speedy trial claim would fail if government had pursued the defendant "with reasonable diligence from his indictment to arrest" despite eight-and-one-half years passing from the indictment). The "burden of showing prejudice lies with the individual claiming the violation and 'the possibility of prejudice is not sufficient to support the position that . . . speedy trial rights are being violated.'" *Hakeem*, 990 F.2d at 760 (quoting *Loud Hawk*, 474 U.S. at 315).

Defendant does not point to any evidence that he believes has been lost or altered and has not named any witnesses who are no longer available. The core evidence in this matter is in the form of computer files, and the delay here does not alter the reliability or accuracy of that evidence. Overall, the delay in bringing the Defendant to trial has not prejudiced his defense and the Defendant does not allege that the "reliability of the truth finding process" has at all been impaired. *See Hakeem*, 990 F.2d at 760 (citing *Wells v. Petsock*, 941 F.2d 253, 258 (3d Cir. 1991)). In fact, much of the delay was attributable to Defendant's own motions and actions and the Court took great care to ensure that his rights were protected, and each motion was given extensive consideration.

To support his claim, Defendant cites to his anxiety, but admits that he purposely sought to avoid psychiatric evaluation because he did not want medication and therefore has no proof of

such anxiety. (ECF No. 115 at 22). Defendant points to taking medication to treat "frequent headaches and dizzy spells possibly caused by anxiety" but does not provide any medical diagnosis to support his inference. *See id.* In order to state a claim based on anxiety, "a defendant must show that his anxiety extended beyond that which 'is inevitable in a criminal case'" and there must be "evidence of psychic injury" to support such allegations. *Hakeem*, 990 F.2d at 762 (citing *United States v. Dreyer*, 533 F.2d 112, 116 (3d Cir. 1976)).

With regard to Defendant's claims of oppressive pretrial incarceration, he has not provided any proof of "sub-standard conditions or other oppressive factors beyond those that necessarily attend imprisonment." *See Wells v. Petsock*, 941 F.2d 253, 257-58 (3d Cir. 1991). Similarly, the fact that "the jail has virtually no amenities" does not amount to the prejudice required to prove a Sixth Amendment violation. *See* (ECF No. 115 at 21). While the Defendant raised some medical issues he has experienced, the Defendant provides no support for the fact that these conditions were the result of delay, nor does he provide support for the fact that they were a result of being denied medical attention. *See id.* Defendant's own contention that he was prescribed a medication for headaches and dizzy spells that he has been taking "for more than a year," instead supports the fact that the Defendant has access to medical treatment at his detention facility. *Id.*

After careful consideration of the record, the Court finds that Defendant has not suffered a violation of his Sixth Amendment right to a speedy trial. Although the Court agrees that the length-of-the-delay factor weighs in the Defendant's favor, the remaining factors cut against the Defendant. The Defendant sufficiently asserted his right, however his actions contrary to that assertion go against a speedy trial violation. Legitimate reasons were provided for the delay and there is no evidence that the Government deliberately sought delays in order to hamper the defense. In fact, much of the delay is attributable to the actions of Defendant himself. Most significantly,

the Defendant has provided insufficient support to find prejudice as a result of the pretrial delay. Taken together, the *Barker* factors weigh in favor of the Government. *See Conroy v. Leone*, 316 F. App'x 140, 144 (3d Cir. 2009) (finding delay of four years between defendant's arrest and trial did not violate his Sixth Amendment right to a speedy trial where factors other than delay weigh against defendant). The Defendant's motion to dismiss the indictment on Sixth Amendment grounds is therefore denied.

### D. FEDERAL RULE OF CRIMINAL PROCEDURE 48(b)

The Defendant further asks this Court to dismiss the indictment for "a want of prosecution" pursuant to Federal Rule of Criminal Procedure 48(b). (ECF No. 115 at 24). As the government contends, it "obtained a search warrant, executed it, and charged Baer by complaint within months of opening its investigation, accommodated his counsel's repeated requests for continuances, made itself available for plea negotiations, and responded promptly to all motions, requests for discovery and Court directives." (ECF No. 119 at 4). The Court agrees, and Defendant's argument fails.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's pro se motion to suppress evidence (ECF No. 99) and pro se motion to dismiss the indictment (ECF No. 155) are DENIED. An appropriate order accompanies this Opinion.

DATED: March 26, 2019                          **CLAIRE C. CECCHI, U.S.D.J.**

43